UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARTIN PULIDO SANCHEZ,<br><br>   Petitioner,<br><br>   v.<br><br>SCOTT FRAUENHEIM,<br><br>   Respondent. | Case No. 14-cv-01971-JD<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY**<br><br>Re: Dkt. No. 15 |

Martin Pulido Sanchez, a pro se state prisoner, has brought a habeas petition pursuant to 28 U.S.C. § 2254. The Court ordered respondent to show cause why the writ should not be granted. Respondent filed an answer and a memorandum of points and authorities in support of it, and lodged exhibits with the Court. Petitioner filed a traverse. The petition is denied.

## BACKGROUND

Sanchez was found guilty after a jury trial of eleven counts of lewd and lascivious conduct with two children. Clerk's Transcript ("CT") at 296-303. He was sentenced to eleven consecutive terms of fifteen years to life in prison. *Id*. at 506, 510-12. The California Court of Appeal affirmed the conviction. *People v. Sanchez*, No. A136104, 2013 WL 6843580, at *1 (Cal. Ct. App. Dec. 30, 2013). The California Supreme Court denied Sanchez's petition for review. Answer, Ex. E.

The California Court of Appeal summarized the facts of the crime as follows:

> H. began dating appellant in 1989. In 1990, appellant, H., and two of H's children, daughter S. and son M., moved into a house on a dairy ranch where appellant worked in the Two Rock area of Sonoma County. S., the younger of the two children, was five years old at the time of the move. After moving to the ranch, appellant and H. had two daughters together: An., who was born in 1990, and

Ar., who was born in 1992. Appellant was violent toward H. and M., and H. sometimes left the house to sleep in her car.

Appellant repeatedly molested S., An. and Ar. while they lived at the dairy ranch. In 1999, he fled to Mexico after drugs were discovered at the house and S. reported appellant had raped her once. Appellant returned to the Bay Area and was arrested; and, in 2000, he pled no contest to a single count of forcible lewd conduct with S., a child under 14 years of age. (§ 288, subd. (b)(1).) He was sentenced to prison and sent to a facility in Mississippi to serve his term.

In 2008, while he was still in prison, appellant telephoned Ar. Ar. was very upset by the call, and her therapist contacted the Sonoma County Sheriff's Office to report that Ar. had been molested by her father. Both Ar. and An. were interviewed as part of the resulting investigation.

The Sonoma County District Attorney filed a criminal complaint on March 8, 2010, and an arrest warrant issued. A preliminary hearing took place in March 2011, and an amended information was thereafter filed charging appellant with 11 counts of lewd conduct with a child under 14 under section 288, subd. (a), with five counts naming Ar. as a victim and six counts naming An. as a victim. The pleading included a "multiple victim" allegation as to each count under the One Strike law (§ 667.61, subd. (b) & former subds. (c)(7) & (e)(5) [now (c)(8) & (e)(4) ]; *see* Stats. 1993–1994, 1st Ex.Sess., ch. 14, § 1, p. 8570; Stats. 1997, ch. 817, § 6, p. 5575; Stats. 1998, ch. 936, §§ 9, 40, eff. Sept. 28, 1998, pp. 6874, 6923.) As to three of the Ar. counts and all of the An. counts, it was alleged appellant had committed acts of substantial sexual conduct under section 1203.066, subdivision (a)(8). Two counts alleging continuous sexual abuse under section 288.5, subdivision (a) were dismissed before trial.

Appellant filed a motion to dismiss the charges based on preaccusation delay in filing the complaint, which was denied by the trial court. The case proceeded to trial before a jury.

S. testified appellant had molested her repeatedly from the time she was about four years old, at least once a week for about 10 years. The acts included touching her vagina with his hands and penis, kissing, and intercourse. The property at Two Rock was like a "really old ghost town," with barns, sheds, houses, and a chicken coop near the house where the family lived. Appellant would abuse S. in the barn and in his bedroom, and occasionally in their living room when H. was not home. S. confided in her best friend about the abuse, but did not tell anyone else because appellant had threatened to hurt her mother and had told S. he would keep abusing her regardless. When she decided to come forward and report one act of rape, she was 13 years old. She did not disclose the many other acts of abuse, because she thought it would be difficult to talk about so many incidents. The parties stipulated appellant had been convicted of a single count of forcible lewd conduct against S. on October 2, 2000.

2

An. testified appellant began sexually molesting her when she was four or five years old, and continued to do so about once a week until he left the house in 1999. The acts included intercourse, digital penetration and oral sex, and were committed in the living room of the house, her parents' bedroom, the bedroom she shared with her sisters, the chicken shed near the house, a barn near their house and another barn on the dairy ranch. Appellant often abused Ar. at the same time as An., or had one of them act as a lookout while he molested the other. An. once saw appellant grab S. and orally copulate her while S. screamed. An. did not did not disclose the abuse because she loved her father very much and considered the acts their secret.

Ar. described a similar pattern. She testified she was abused by her father in the chicken coop in 1997, when she was about five years old. She recalled a day in which he touched her vagina over her clothing while he was driving her home from school, as well as an incident in the barn where he laid her on the hay and put his penis in her vagina. He would also put his penis in her vagina on other occasions in the barn, the chicken coop and in her parents' bedroom. He once had her stand naked in front of the mirror in his bedroom and look at herself; other times he would put her in bed with him and make her touch his penis with her hand under the covers. She considered the abuse to be "like daddy's secret" and did not report it because he was her father and she trusted him. She did not really understand what was going on at the time, and was also afraid because appellant had mood swings. Sometimes he behaved like a normal father "[a]nd then sometimes he was ... like[ ] a really terrifying monster that you didn't want to hurt anybody by saying anything."

Appellant took the stand and denied he had ever touched S., An. or Ar. inappropriately, describing Ar. and An. as his "princess[es]." He worked many hours during the day and the girls were not allowed to accompany him to the barn. He argued frequently with H., who would accuse him of things, and he had hit H. in his daughters' presence. Appellant believed he had a good relationship with S. in general, but he struck her and grabbed her hair when she was 12 years old because she became "jumpy" after he confronted her about speaking to a boy on the telephone. S. was very angry at him after that incident.

Asked about his departure from the house in 1999, appellant explained he "got into a little trouble with the law." He returned to the Bay Area to reunite with his family and was arrested on charges that included the rape of S. He pled no contest to that count, though he did not understand what he was pleading to, because his attorney told him the judge in his case would be very lenient. He acknowledged telling a police officer his penis had touched S.'s leg, but claimed that many things he said during the interview were "lies." Appellant had used methamphetamine, alcohol and marijuana in the 1990's, so much so that he sometimes suffered from memory loss. Though he had considered the possibility he committed sexual assaults against his children while in a blackout stage, he did not believe he did so.

3

> When appellant was interviewed by detectives about the allegations by An. and Ar., appellant told them "Whatever my daughter would say, I would say yes." He acknowledged during the interview he might have molested An. once or twice.

*Sanchez*, 2013 WL 6843580, at *1-3 (footnotes omitted).

## STANDARD OF REVIEW

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The first prong applies both to questions of law and to mixed questions of law and fact, *Williams v. Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations, *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 412-13. A state court decision is an "unreasonable application of" Supreme Court authority, falling under the second clause of § 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the application must be "objectively unreasonable" to support granting the writ. *Id.* at 409.

Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *See Miller-El*, 537 U.S. at 340; *see also Torres v.*

4

*Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000). Moreover, in conducting its analysis, the federal court must presume the correctness of the state court's factual findings, and the petitioner bears the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

The state court decision to which § 2254(d) applies is the "last reasoned decision" of the state court. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Barker v. Fleming*, 423 F.3d 1085, 1091-92 (9th Cir. 2005). When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion. *See Nunnemaker* at 801-06; *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000).

## DISCUSSION

As grounds for federal habeas relief, Sanchez asserts that: (1) his due process rights were violated based on preaccusation delay; (2) there was a statute of limitations violation; and (3) his sentence violated the Eighth Amendment.

### I. PREACCUSATION DELAY

Sanchez argues that his due process rights were violated due to the delay between the time Ar.'s therapist reported the crimes to law enforcement in May 2008 and the time law enforcement interviewed Ar. in December 2008. He also argues that he was prejudiced because the criminal complaint was not filed until March 2010.

**Background**

The California Court of Appeal described the relevant background for this claim and the trial court's denial of the motion to dismiss based on preaccusation delay:

> In the hearing on the motion to dismiss, the following timeline was established: Ar. told her therapist about the molestations on April 30, 2008, who in turn notified the Sonoma County Sheriff's Office on May 5. Detective Lomanto was advised of the report on May 8, and contacted the therapist within a few days of receiving that information. On May 27, Lomanto spoke to Ar.'s foster mother, Cynthia M., who told him Ar. had been extremely traumatized by the events and was not yet able to speak to him. Cynthia told Lomanto they would contact him when Ar. was ready. Lomanto checked back with the family when he did not hear from them, and in August or September, he was told Ar. was ready to be interviewed. An interview scheduled in September or October had to be cancelled.

5

Lomanto interviewed Ar. at the Redwood Children's Center on December 8, 2008, accompanied by an interview specialist and deputy district attorney. This was the first time the district attorney's office was notified of the allegations. That same day, Ar.'s foster family told Lomanto that Ar.'s sister An. had been molested as well. Lomanto contacted An., who was then living in New York, and she flew to California for an interview on January 15, 2009. In Lomanto's view, he did not have enough information to follow through with his investigation until he had spoken to both Ar. and An. Lomanto submitted the case to the district attorney's office on April 30, 2009, and the criminal complaint and arrest warrant issued on March 8, 2010.

During his investigation, Lomanto learned appellant was incarcerated in a facility in Mississippi on his California prison sentence. Lomanto interviewed him in California on July 26, 2010, the day of his release. Lomanto had requested permission to travel to Mississippi to interview appellant at an earlier date, but was told by his supervisors they did not have the funds necessary for him to do so. Lomanto did not seek to have appellant transferred back to California before the expiration of his prison term.

Appellant's defense investigator, James Baker, was also called as a witness at the hearing on the motion to dismiss. Baker was appointed to the case on June 9, 2011. He testified he had trouble locating witnesses, because "the information that we had on witnesses that were stated to me by the defendant were not listed in the original police reports. And then the defendant was only able to recall the first name of witnesses that he believed needed to be interviewed." Baker later explained he had expected the police reports to contain the names of witnesses who worked at the dairy ranch at the time of the alleged molestations.

Baker visited a total of seven ranch and dairy properties, including the ranch at Two Rock, and made contact with people at two of the properties. He spoke to Maria Alonzo, who lived with her family in the house where appellant and his family had lived, and whose husband David had worked with appellant between 1995 and 1999. Baker also spoke to Dennis Hansen, the manager of the dairy and the nephew of its owner, but Hansen was reluctant to provide information and did not appear to remember some facts. Hansen would not or could not provide Baker with employment records for the dairy, and he did not want Baker to speak with dairy employees. A person named Lorenzo was identified as a potential witness, but Baker could not find him and believed he did not want to speak to him. David Alonzo did not make himself available for an interview.

Defense counsel stipulated the delay between the commission of the offenses and the therapist's report to law enforcement in May 2008 was not caused by the prosecution. Counsel argued appellant had been prejudiced by the district attorney's delay in filing the charges after the molestations were reported, due to the victims' inability to recall specific dates and the defense investigator's difficulty in locating witnesses.

The court denied the motion to dismiss, stating: "[Appellant] has

> made a due process claim under the state and [the] federal Constitutions based on preaccusation delay. Under the California Constitution the test is to balance actual prejudice against justification for the delay.... [¶] Under the federal standard, in addition to showing actual prejudice, [appellant] must also show that the delay was undertaken to gain a tactical advantage over [him].... [¶] In the present case there are two separate periods of delay. First, there is the delay between the date the offenses occurred and the date the offenses were first reported to law enforcement. Then there's a second delay between the time the offenses were reported and the date charges were filed. [¶] As for the first delay, the court finds that the delay is justified based on the fact that law enforcement had no knowledge of any of the victims' accusations until 2008; therefore, any prejudice arising out of that delay would be outweighed by the justification for the delay. [¶] As for the second period of delay, [appellant] has failed to demonstrate any actual prejudice arising out of that specific period of delay. There's been no evidence presented that any physical evidence went missing during that period, that any witness became unavailable during that period, or that any witnesses' memory faded during that period. Since no prejudice has been shown during that period of delay the court will not-the court need not make any findings ... whether that period of delay was justified or unjustified. [¶] Additionally, to the extent [appellant] is claiming a federal due process violation, [he] also fails to demonstrate the delay was undertaken to gain a tactical advantage over [him]."

*Sanchez*, 2013 WL 6843580, at *3-4.

**Legal Standard**

The United States Supreme Court has addressed due process claims based on preindictment delay in two main decisions*: United States v. Marion*, 404 U.S. 307 (1971) and *United States v. Lovasco,* 431 U.S. 783 (1977). In *Marion*, the Supreme Court stated that the due process clause of the Fifth Amendment may, under some circumstances, require dismissal of a prosecution based on pre indictment delay even when the prosecution was brought within the applicable limitations period. 404 U.S. at 324. Nevertheless, because the defendants in *Marion* did not show actual prejudice or that the government intentionally delayed the prosecution to gain some tactical advantage or to harass them, the Supreme Court found no due process violation. *Id*. at 325. The Supreme Court declined to specify "when and in what circumstances actual prejudice resulting from pre-accusation delays requires the dismissal of the prosecution," reasoning that such a determination "will necessarily involve a delicate judgment based on the circumstances of each case." *Id*. at 324-25.

7

1  In *Lovasco*, the Supreme Court stated that for claims of pre indictment delay, "proof of prejudice is generally a necessary but not sufficient element of a due process claim," and "the due process inquiry must consider the reasons for the delay as well as the prejudice to the accused." 431 U.S. at 790. The Supreme Court explained that prosecutors do not "deviate from fundamental conceptions of justice" when they postpone indictment in order to ensure that prosecution is warranted or to allow full development of all charges prior to indictment. *Id*. at 790-94. The Supreme Court held that "to prosecute a defendant following investigative delay does not deprive him of due process, even if his defense might have been somewhat prejudiced by the lapse of time." *Id*. at 796. As in *Marion*, however, the Supreme Court again declined to articulate a clear rule setting forth the circumstances in which pre indictment delay requires dismissal of a prosecution. *Id*. at 796-97.

Since the Supreme Court's 1977 decision in *Lovasco*, the federal courts of appeals have split on the proper standard to apply in cases alleging pre indictment delay. *See Jones v. Angelone*, 94 F.3d 900, 905 (4th Cir. 1996) (describing circuit split). Under the two-prong Ninth Circuit standard, the defendant first must prove "actual, non-speculative prejudice from the delay." *United States v. Corona-Verbera*, 509 F.3d 1105, 1112 (9th Cir. 2007) (internal quotation marks omitted). Establishing prejudice is a heavy burden that is "rarely met." *Id*. If the defendant shows actual prejudice, the court balances the length of the delay against the reasons for the delay, and the defendant must show that the delay offends the "fundamental conceptions of justice which lie at the base of our civil and political institutions." *Id*. (internal quotation marks omitted). The Fourth Circuit has adopted a similar standard, *see Jones*, 94 F.3d at 905, but most other circuits have held that to prevail on a claim of pre indictment delay, a defendant must show, in addition to actual prejudice, intentional delay by the government to gain an unfair tactical advantage. *See id*. (collecting cases). So far the Supreme Court has not clarified the standard for determining when preindictment delay violates due process. *See New v. Uribe*, 532 Fed. Appx. 743, 744 (9th Cir. 2013) ("The relevant Supreme Court precedents explicitly decline to set out a clear test for balancing justification against prejudice, asserting that such balancing requires case-by-case consideration.")

**Discussion**

The California Court of Appeal described the different standards under state and federal law and then denied this claim:

> Appellant divides the preaccusation delay in this case into two blocks of time-the seven-month period between the therapist's report of the crimes against Ar. to law enforcement in May 2008 and Lomanto's initial interview of her in December 2008, and the 11-month period between Lomanto's submission of the case to the district attorney in April 2009 and the filing of the criminal complaint in April 2010. Because the trial court's ruling was based on the lack of prejudice rather than the reasonableness of the delay, we view the claim as one involving a single block of time from May 2008 until March 2010.
>
> Substantial evidence supports the trial court's conclusion appellant was not prejudiced by the delay. Though it is undoubtedly true that memories faded and witnesses became unavailable during the years between the commission of the crimes and the trial on the charges, the defense did not establish any particular evidence was lost between May 2008 and March 2010, the period at issue. Baker's testimony supported an inference the potential witnesses he spoke to were either reluctant to talk or had difficulty remembering certain facts, but appellant did not establish those witnesses would have been more cooperative or helpful if the trial had gone forward in May 2008, when the accusations were first reported to law enforcement. The prosecution of child molestation charges based on generic testimony, i.e., testimony about conduct occurring over several years when the facts of one offense are indistinguishable from those of other offenses, does not itself deprive a defendant of due process. (*People v. Jones* (1990) 51 Cal.3d 294, 318; *Brown v. Superior Court* (2010) 187 Cal. App. 4th 1511, 1527.)
>
> Appellant argues he was entitled to dismissal under *People v. Cave* (1978) 81 Cal. App. 3d 957, because the authorities were required to notify him of the pending charges once the complaint was filed. We are not persuaded. The court in *Cave* considered a prisoner's statutory right to be brought to trial on new charges within 90 days of demanding a trial under section 1381. (*Cave*, at p. 964.) It concluded that because the authorities had not notified the defendant in that case of the new charges against him, he was excused from the statutory requirement of filing a demand for a trial, and his speedy trial claim involved the same basic test as when no specific statute is involved; i.e., the court must weigh the prejudicial effect of the delay against the justification for the delay. (*Ibid*.) The record in this case does not reveal when appellant first learned of the charges against him, and no postaccusation speedy trial claim has been raised under section 1381. In any event, *Cave* requires a showing of prejudice and prejudice has not been demonstrated.
>
> Appellant claims he was "ambushed" by the detectives who interviewed him upon his return to California after he finished

9

> serving his prison sentence in Mississippi. But no evidence was presented to show he was surprised by the interview or the charges against him, and he did not seek to suppress his statements as involuntary. And, even if we assume appellant was notified of the charges for the first time during the interview, he has failed to establish any connection between the preaccusation delay of which he now complains and his statements during the interview.
>
> Accordingly, the trial court did not abuse its discretion when it concluded prejudice had not been established. It was unnecessary for the court to consider the reasons for the delay and did not err in failing to do so. (*See In re Johns* (1981) 119 Cal. App. 3d 577, 581 [when considering delay in filing petition to extend commitment under § 1026.5, lack of prejudice made it unnecessary to consider reasons for delay].)

*Sanchez*, 2013 WL 6843580, at *5-6.

While the Supreme Court's opinions in *Marion* and *Lovasco* clearly established that due process may be violated under certain circumstances by preaccusation delay resulting in actual prejudice, the Court declined to set forth a specific standard to determine when a delay violates due process. Due to the lack of a clear standard, this Court cannot say that the California Court of Appeal's decision, that there was no prejudice and no due process violation, was objectively unreasonable.[1] The decision was on point with Supreme Court precedent, that there is no due process violation without actual prejudice from the delay. *See Lovasco* at 789; *Marion* at 324-25. Nor does a review of the record indicate that the state court decision relied on an unreasonable determination of the facts.

Sanchez has failed to demonstrate that the government intentionally delayed the prosecution to gain some tactical advantage or more importantly that he suffered actual prejudice. There are no allegations that any physical evidence was lost, any witness became unavailable, or that a specific witness's memory faded during that period. Sanchez argues generally that memories faded, but this argument is insufficient to establish prejudice. The defense investigator testified that potential witnesses he spoke to were either reluctant to talk or had difficulty

---

[1] The California Court of Appeal applied state law, noting "[b]ecause the protection afforded under the California Constitution is 'at least as favorable for [appellant] in this regard as the law under the United States Constitution,' we apply California law to appellant's claim. *Sanchez*, 2013 WL 6843580, at *5 (second alteration in original). It was not unreasonable for the state court to apply state law due to the lack of a definitive test from the Supreme Court.

10

1  remembering certain facts.  But, Sanchez has not shown that these witnesses would have been
2  more cooperative or helpful had the trial gone forward sooner.  Nor has he described the specific
3  facts that witnesses could not remember in 2010 that they could have remembered in 2008
4  concerning incidents in the 1990s.  For all these reasons this claim is denied.

## II.   STATUTE OF LIMITATIONS

Sanchez argues that his convictions for the six counts naming An. as a victim were barred by the statute of limitations; therefore, his sentence under the One Strike Law for multiple victims must be reversed.

### Background

The counts related to An. were alleged to have been committed between June 6, 1995, and December 1, 1999.  *Sanchez*, 2013 WL 6843580, at *6.  The prosecution commenced on March 8, 2010, when the complaint was filed and an arrest warrant was issued.  *Id*.  The prosecution proceeded on the theory that the action was timely pursuant to California Penal Code section 801.1, which at that time stated, "prosecution for a felony offense described in Section . . . that is alleged to have been committed when the victim was under the age of 18 years, may be commenced any time prior to the victim's 28th birthday."  *Id*.

Sanchez argues that section 801.1 did not become effective until January 1, 2006, and that the previous statute of limitations had expired by then.  Respondent argues and the California Court of Appeal noted that California Penal Code section 799 also applied.  It states that the "[p]rosecution for an offense punishable by death or by imprisonment in the state prison for life or for life without the possibility of parole . . . may be commenced at any time."  *Sanchez*, 2013 WL 6843580, at *6 (omission in original).

### Legal Standard

Laws extending the limitations period for prosecution of a crime, which are enacted after the previously applicable limitations period has expired, violate the Ex Post Facto Clause.  *Stogner v. California*, 539 U.S. 607, 609 (2003).  If such laws are enacted before the preexisting limitations period has expired, however, the enactment does not violate the Ex Post Facto Clause. *Renderos v. Ryan*, 469 F.3d 788, 795 (9th Cir. 2006); *United States v. Bischel*, 61 F.3d 1429,

United States District Court
Northern District of California

1435-36 (9th Cir. 1995) (change in law extending statute of limitations after defendant committed offense but before original limitations period had run did not violate Ex Post Facto Clause).  The fact that the extension of the limitations period is conditional on certain events, such as corroboration and reporting of the crime to authorities, does not matter; the focus is whether the limitations period has expired before the statute that extended the limitations period was enacted. *See Renderos*, 469 F.3d at 795.

**Discussion**

The California Court of Appeal described the relevant state law and denied this claim:

> Notwithstanding the theory on which the district attorney proceeded in the trial court, we agree with the People that section 799 applies. (*See People v. Martinson* (1986) 188 Cal. App. 3d 894, 899-900, fn. 6 [judgment affirmed when suit was timely under different statute of limitations than applied by the trial court].)  In *People v. Perez* (2010) 182 Cal. App. 4th 231, 239-240 (*Perez*), the court interpreted section 799 to extend to a defendant who, like appellant, was charged with and convicted of section 288, subdivision (a) violations with true findings under the multiple victim provision of the One Strike law.  Such a defendant, the court reasoned, has committed a felony "punishable by ... imprisonment in the state prison for life" within the meaning of section 799.  "Section 667.61 is an alternative penalty scheme that, when charged, defines the length of imprisonment for the substantive offense of violating section 288[ ].  Thus, the unlimited timeframe for prosecution set out in section 799 for an offense 'punishable by death or by imprisonment in the state prison for life ...' applies, given that [the] defendant was found guilty of violating section 288[ ] and 'in the present case or cases' (§ 667.61, subd. (e)(5)) was found guilty of another such violation involving another victim (*ibid*.), and therefore was subject to the life-term sentencing provision contained in section 667.61, subdivision (b)." (*Perez*, at pp. 239–240.)
>
> The court in *Perez* distinguished *People v. Turner* (2005) 134 Cal. App. 4th 1591 (*Turner*), which concluded section 799 does not govern when a defendant receives a life sentence as a consequence of having qualifying prior convictions under the "Three Strikes" law (§ 1170.12). *Turner* explained a Three Strikes law sentence, "is not a punishment specified by statute for an 'offense,' i.e., the current act for which the defendant is to be prosecuted." (*Id*. at p. 1597.) Rather, "[i]t is an alternative sentence for those who commit a current felony offense, and who are recidivist offenders" and "is imposed upon conviction of 'a felony' without regard to the seriousness of the current felony offense, if the defendant has two or more 'serious' or violent felony convictions." (*Ibid*.)
>
> Because the result in Turner was predicated on the distinction between recidivist allegations and conduct constituting the current

12

offense, we agree with *Perez* it is not controlling.  As explained in Perez, the holding in *Turner* was based in part on the "'... primary recommendation of the Law Revision Commission that the length of a "limitations statute should generally be based on the seriousness of the crime." [Citation.]  The use of seriousness of the crime as the primary factor in determining the length of the applicable statute of limitations was designed to strike the right balance between the societal interest in pursuing and punishing those who commit serious crimes, and the importance of barring stale claims. [Citation.]  It also served the procedural need to "provid[e] predictability" and promote "uniformity of treatment for perpetrators and victims of all serious crimes."' ([*Turner*, *supra*, 134 Cal. App. 4th] at p. 1594.)  Defendant's crimes were serious enough to earn him a life sentence; therefore they were serious enough to warrant prosecution at any time during his natural life." (*Perez*, supra, 182 Cal. App. 4th at pp. 241–242.)

The People alternatively claim the convictions on the An. counts may be upheld because the evidence showed appellant committed many more lewd acts against An. than were charged, and at least six of them were committed within the limitations period of section 801.1, subdivision (a).  It appears the People are correct on this point as well.

On the dates appellant was alleged to have committed his offenses against An., the statute of limitations for a violation of section 288, subdivision (a) was six years. (Former § 800; Stats. 1984, ch. 1270, § 2, p. 4335.)  A section 288, subdivision (a) violation committed on June 6, 1995, the earliest date in the range alleged in the amended information for the An. counts, would have been time-barred as of June 6, 2001 had the six-year limitations period remained intact. However, on January 1, 2001, before the expiration of the six-year period, the Legislature enacted former section 803, subdivision (h)(1) and extended the limitations period for felonies requiring sex offender registration (including § 288, subd. (a) violations) to 10 years. (Stats. 2000, ch. 235, § 1, p. 2338; *Simmons*, *supra*, 210 Cal. App. 4th at p. 788; see § 801.1, subd. (b) [continuing 10-year limitations period].)

Under this 10-year limitations period, any section 288, subdivision (a) violation committed on or after January 1, 1996, was not time-barred on January 1, 2006, when section 801.1, subdivision (a) went into effect and extended the limitations period until the victim's 28th birthday-a provision that would render the prosecution in this case timely because An. has not yet turned 28. (Stats. 2005, ch. 479, § 2, p. 3790; see Stats. 2007, ch. 579, §§ 40, 53, eff. Oct. 13, 2007, pp. 4845, 4853.)  Thus, the prosecution of each section 288 violation against An. would be untimely if committed between June 6, 1995 (the earliest date alleged in the information) and December 31, 1995, but timely if committed between January 1, 1996 and December 31, 1999 (the latest date alleged in the amended information).  Appellant agrees December 31, 1995 is the date that demarcates timely and untimely charges.

Although the earliest date in a range of dates controls when a statute of limitations challenge is based on the pleading itself (*People v.

13

> *Angel* (1999) 70 Cal. App. 4th 1141, 1145–1147 (*Angel*); *Gasaway v. Superior Court* (1977) 70 Cal. App. 3d 545, 551), the proper question on review of a criminal conviction after a trial is "whether the record demonstrates that the crime charged actually fell within the applicable statute of limitations." (*Smith*, *supra*, 98 Cal. App. 4th at p. 1193; *accord*, *People v. Ortega* (2013) 218 Cal. App. 4th 1418, 1433 (*Ortega*).) In this case, each count did.
>
> An. testified appellant molested her about once a week from 1995 until 1999, at locations that included the chicken shed, the barn near the family home, the dairy barn, her parents' bedroom and the bedroom she shared with her sisters. Her timeline as to some of these acts was vague, but she specifically described acts of intercourse and digital penetration in the chicken shed in 1995, 1996, 1997, 1998, and 1999. An. also testified the molestations occurred most frequently in her parents' bedroom, where she saw appellant molest Ar. as well. The crimes against Ar. did not begin until 1997, a period appellant concedes was within the statute of limitations.
>
> The evidence presented the jury with an all-or-nothing choice-that appellant had committed lewd acts against An. on a weekly basis from 1995 until 1999, or that he did not molest her at all. In convicting appellant of the charged offenses, the jury necessarily accepted An.'s version of events over appellant's. Given An.'s testimony about weekly molestations in the chicken shed in 1996, 1997, 1998 and 1999, and frequent molestations in her parents' bedroom, with her sister's presence dating these acts as occurring in 1997 or later, at least six violations of section 288 were committed after December 31, 1995. The prosecution was timely. (*Ortega*, supra, 218 Cal. App. 4th at p. 1431 [when range of dates alleged, some within and some outside statute of limitations, victim's testimony about weekly molestations sufficient to show defendant committed at least six acts within limitations period]; *Smith*, *supra*, 98 Cal. App. 4th at pp. 1188–1190 [evidence showed the defendant had committed at least one other violation of section 288 or 288.5 within the six-year limitation period where victim testified to hundreds of acts, a multitude of which occurred within the necessary range]; *contra*, *Angel*, *supra*, 70 Cal. App. 4th 1146–1147 [section 288 convictions reversed where range of dates alleged and victim's testimony did not support a finding that any act occurred within limitations period].)

*Sanchez*, 2013 WL 6843580, at *7-8.

To the extent that Sanchez argues the California Court of Appeal erred in its interpretation of state law, he is not entitled to federal habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."). The state court's ruling that penal code section 799 was applicable in this case is a matter of state law and does not

14

1  implicate the federal constitution.  Moreover, a habeas petitioner may not "transform a state-law
2  issue into a federal one" merely by asserting a violation of the federal constitution.  *Langford v.*
3  *Day*, 110 F.3d 1380, 1389 (9th Cir. 1996).  Thus, Sanchez's argument that the six convictions
4  against An. were not timely under section 801.1 due to an Ex Post Facto violation under *Stogner* is
5  meritless in light of the convictions being timely under section 799.

6  Even assuming the state courts were incorrect regarding section 799, they also found that
7  the offenses were committed within the limitations period of section 801.1 and that there was no
8  Ex Post Facto violation.  Sanchez has not shown that the California Court of Appeal decision
9  regarding section 801.1 was objectively unreasonable.  The state court looked to the various
10 changes regarding the statute of limitations and when the changes took effect with respect to when
11 the crimes occurred.  The court found that there was no violation of *Stogner* and that there were at
12 least six acts committed within the appropriate time period to sustain the convictions pursuant to
13 state law.  Sanchez has failed to demonstrate that this decision was an unreasonable application of
14 *Stogner*.  For all these reasons this claim is denied and his sentence under the One Strike Law was
15 correct.

## III. SENTENCE

Sanchez contends that his consecutive sentences, which constitute 165 years to life, are cruel and unusual punishment in violation of the Eighth Amendment.

**Legal Standard**

The Eighth Amendment to the United States Constitution proscribes "cruel and unusual punishments."  U.S. Const. amend. VIII.  The United States Supreme Court has held that the Eighth Amendment includes a "narrow proportionality principle" that applies to terms of imprisonment.  *See Graham v. Florida*, 560 U.S. 48, 59-60 (2010); *Harmelin v. Michigan*, 501 U.S. 957, 996-97 (1991) (Kennedy, J., concurring); s*ee also Taylor v. Lewis*, 460 F.3d 1093, 1097 (9th Cir. 2006).  However, the precise contours of this principle are unclear, and successful challenges in federal court to the proportionality of particular sentences are "exceedingly rare." *Solem v. Helm*, 463 U.S. 277, 289-90 (1983); s*ee also Ramirez v. Castro*, 365 F.3d 755, 775 (9th Cir. 2004).  "The Eighth Amendment does not require strict proportionality between crime and

United States District Court
Northern District of California

sentence. Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime." *Harmelin*, 501 U.S. at 1001 (Kennedy, J., concurring) (citing *Solem*).

In assessing the compliance of a noncapital sentence with the proportionality principle, a reviewing court must consider "objective factors" to the extent possible. *Solem*, 463 U.S. at 290. Foremost among these factors are the severity of the penalty imposed and the gravity of the offense. *Id.* at 290-91. "Comparisons among offenses can be made in light of, among other things, the harm caused or threatened to the victim or society, the culpability of the offender, and the absolute magnitude of the crime." *Taylor*, 460 F.3d at 1098.

The following decisions of the United States Supreme Court illustrate these principles. In *Harmelin*, the Supreme Court upheld a life sentence without the possibility of parole for a first-time offender convicted of possessing 672 grams of cocaine. *Harmelin*, 501 U.S. at 961. In *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) the Supreme Court held that it was not an unreasonable application of clearly established federal law for the California Court of Appeal to affirm a "Three Strikes" sentence of two consecutive 25-years to life imprisonment terms for a petty theft with a prior conviction involving theft of $150 worth of videotapes. *Id.* at 66, 75-77. In *Ewing v. California*, 538 U.S. 11 (2003), the Supreme Court held that a "Three Strikes" sentence of 25-years to life in prison imposed on a grand theft conviction involving the theft of three golf clubs from a pro shop was not grossly disproportionate and did not violate the Eighth Amendment. *Id.* at 18, 29. In *Hutto v. Davis*, 454 U.S. 370 (1982), the Supreme Court upheld the defendant's sentence of 40 years in prison after his conviction for possession of nine ounces of marijuana and drug paraphernalia. *Id.* at 371-72. Finally, in *Rummel v. Estelle*, 445 U.S. 263 (1980), the Supreme Court upheld a sentence of life with the possibility of parole for a defendant's third nonviolent felony: obtaining money by false pretenses. *Id.* at 265, 285.

Federal circuit courts have upheld similarly lengthy sentences. *See e.g.*, *Crosby v. Schwartz*, 678 F.3d 784, 791-95 (9th Cir. 2012) (sentence of 26-years to life under California's Three Strikes Law for the defendant's failure to annually update his registration as a sex offender and failure to register within five days of a change of address did not constitute cruel and unusual punishment, in violation of the Eighth Amendment); *Norris v. Morgan*, 622 F.3d 1276, 1285-96

16

1  (9th Cir. 2010) (upholding a sentence of life in prison without the possibility of parole under

2  Washington's 'Two Strikes Law' following the defendant's conviction for child molestation,

3  which involved "touching a five-year-old girl on her 'privates' or 'genitalia' and over her clothing

4  for at most 'a couple of seconds.'"); *Taylor*, 460 F.3d at 1098 (upholding a "Three Strikes"

5  sentence of 25-years years to life in prison for possession of 36 milligrams of cocaine). *Cf.*

6  *Moore v. Biter*, 725 F.3d 1184, 1186, 1190 (9th Cir. 2013) (concluding that a sentence of 254

7  years and four months in prison violated the Eighth Amendment proscription against cruel and

8  unusual punishment where the petitioner was a juvenile when he committed various sex and non-

9  sex offenses).

**Discussion**

The California Court of Appeal discussed the relevant state and federal law and denied this claim:

> Appellant argues that as "horrible" as his crimes were, "he has almost no likelihood of repeating them if ever released." He notes that his offenses did not involve threats of violence, that his daughters have done very well in their lives despite the abuse, and that he lacked any other significant criminal record (though he acknowledges his conviction of forcible lewd conduct against S. and that he engaged in methamphetamine abuse and manufacturing). We are not persuaded.
>
> At the time of his arrest in this case, appellant had been in prison for many years. Crediting his claim that he refrained from both child molestation and drug abuse during his incarceration, and noting that his score on the STATIC–99R actuarial instrument places him at a "low" risk of committing future sex offenses, he has nonetheless continued to deny molesting his daughters and there is no suggestion he had engaged in any sex offender treatment. That appellant's daughters have gone on to become strong young women does not render his conduct at the time less serious or suggest he does not remain a danger to others. Nor is it particularly mitigating that his crimes did not involve threats of physical violence; his daughters were very young when he molested them and he possessed a tremendous psychological advantage due to the parental relationship. None of the circumstances mentioned by appellant renders a lifetime in prison a grossly disproportionate punishment or one that is "out of sync" with the nature of the crime or the offender.
>
> Appellant complains he is being punished more harshly than he would have been if he had murdered one of his daughters. The purpose of the One Strike law is "to ensure serious and dangerous sex offenders would receive lengthy prison sentences upon their first conviction." (*People v. Palmore* (2000) 79 Cal .App. 4th 1290, 1296.) Appellant has been convicted of committing serious sexual

17

> offenses in two separate cases and against three separate victims, all of whom were very young at the time. Although the "final consequence" of a murder is categorically different than a sexual violation, the repeated commission of lewd acts against multiple victims is extremely serious (*Wutzke, supra*, 28 Cal.4th at pp. 930-931) and punishing such conduct as harshly as murder is neither shocking nor outrageous (*People v. Alvarado* (2001) 87 Cal. App. 4th 178, 200 [no cruel and unusual punishment where rape during burglary punished as harshly as second degree murder]; *People v. Estrada* (1997) 57 Cal. App. 4th 1270, 1278–1282 [same] ).
>
> Appellant also notes he is being punished more harshly than he would have been if convicted of two counts of continuous sexual abuse under section 288.5, which at the time of the offenses carried a sentence of up to 16 years in prison, and was not then subject to the One Strike law sentencing provisions. (*People v. Palmer* (2001) 86 Cal. App. 4th 440, 443.) There was no prosecutorial obligation to proceed under a statute affording more lenient punishment. (*See Davis v. Municipal Court* (1988) 46 Cal. 3d 64, 87 [so long as sufficient facts demonstrate probable cause defendant committed a crime, prosecutor has discretion to determine what charges to bring].) Moreover, section 288.5 was added to the list of offenses subject to One Strike law sentencing in 2006 (former § 667.61; Stats. 2006, ch. 337, § 33, p. 2639), a further indication that a life term for multiple lewd acts against two or more victims is neither cruel nor unusual.

*Sanchez*, 2013 WL 6843580, at *11-12 (footnote omitted).

The state court opinion denying this claim was not an unreasonable application of Supreme Court authority. Sanchez's sentence, while severe, was not so grossly disproportionate to his crimes to render it unconstitutional. Sanchez was convicted of multiple counts of lewd and lascivious conduct on his two daughters and had a previous conviction for a single count of forcible lewd conduct on another child who was residing with him. The Ninth Circuit has observed that "[t]he impact of [child molestation] on the lives of [its] victims is extraordinarily severe." *Norris*, 622 F.3d at 1294 (quoting *Cacoperdo v. Demosthenes*, 37 F.3d 504, 508 (9th Cir. 1994) (alterations in original)).

Sanchez's crimes were more serious than the petty theft conviction in *Andrade*, the shoplifting crime in *Ewing*, the conviction for obtaining money under false pretenses at issue in *Rummel*, and the conviction for possession of 36 grams of cocaine in *Taylor*, all of which involved sentences that were upheld against an Eighth Amendment challenge. California law provides for long terms of imprisonment for crimes of molestation of children, and Sanchez has identified no Supreme Court authority that would override that legislative decision. *See Ewing*, 538 U.S. at 30

n.2; *Hutto*, 454 U.S. at 372 (the United States Supreme Court "'has never found a sentence for a term of years within the limits authorized by statute to be, by itself, a cruel and unusual punishment.'"). Sanchez's conduct was more egregious than what was upheld by the Ninth Circuit in *Norris*, where the defendant improperly touched a child for just a few seconds over clothing and received a life sentence because it was his second strike. Sanchez has not demonstrated an unreasonable application of federal law to warrant habeas relief and thus this claim is denied.[2]

## CONCLUSION

1. The petition for writ of habeas corpus is **DENIED** on the merits. A certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c). This is not a case in which "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

2. Petitioner's motion for a hearing date (Docket No. 15) is **DENIED**.

**IT IS SO ORDERED.**

Dated: October 13, 2015

_____
JAMES DONATO
United States District Judge

---

[2] Because Sanchez has failed to raise an inference of gross disproportionality, this Court need not compare his sentence to the sentences of other defendants in other jurisdictions. *Harmelin*, 501 U.S. at 1005; *United States v. Meiners*, 485 F.3d 1211, 1213 (9th Cir. 2007) (per curiam) ("in the rare case in which a threshold comparison [of the crime committed and the sentence imposed] leads to an inference of gross disproportionality, we then compare the sentence at issue with sentences imposed for analogous crimes in the same and other jurisdictions.").

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MARTIN PULEDO SANCHEZ,

    Plaintiff,

  v.

SCOTT FRAUENHEIM,

    Defendant.

Case No.  14-cv-01971-JD

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on October 13, 2015, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Martin Puledo Sanchez ID: P-96562
Pleasent Valley State Prison A-3#237
P. O. Box 8500
Coalinga, CA 93210

Dated: October 13, 2015

Susan Y. Soong
Clerk, United States District Court

By: _____
LISA R. CLARK, Deputy Clerk to the
Honorable JAMES DONATO